1

2

3

4

5

6            **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF NEVADA**

7

8
JOHN M. TOWNSEND,                    )        3:06-CV-00477-LRH (RAM)
9                                    )
            Plaintiff,               )
10                                   )        **REPORT AND RECOMMENDATION**
        vs.                          )        **OF U.S. MAGISTRATE JUDGE**
11                                   )
SGT. ADAMSON, et. al.,               )
12                                   )
            Defendants.              )
13 _____ )

14        This Report and Recommendation is made to the Honorable Larry R. Hicks, United

15  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

16  to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17        Before the court is Defendants' Motion for Summary Judgment (Doc. #23). Plaintiff

18  opposed the motion (Doc. #25) and Defendants replied (Doc. #228)

19        The court has thoroughly reviewed the pleadings and the record and recommends

20  Defendants' motion for summary judgment be granted.

21                            **I. BACKGROUND**

22        Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the

23  Nevada Department of Corrections (NDOC) (Doc. #26). At the time of the facts giving rise

24  to Plaintiff's Amended Complaint, he was an inmate at Nevada State Prison (NSP) in Carson

25  City, Nevada (Doc. #7). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging

26  state officials violated his First Amendment rights to free speech, against retaliation and access

27  to the courts and his Fourteenth Amendment right to due process (Doc. #7). Counts II and

28  III in Plaintiff's Amended Complaint are the only remaining claims.

1    In Count II, Plaintiff asserts violations of his First Amendment rights to free speech

2  and against retaliation and a violation of his Fourteenth Amendment right to due process

3  (Doc. #7 at 10).  Plaintiff alleges Defendant Phillippi violated his First Amendment rights to

4  free speech when he confiscated Plaintiff's personal belongings, which included "maps of some

5  type of structer (sic)", a years worth of Home Power magazines, a Maytag catalog, and a

6  "9"x12" envelope" containing Plaintiff's own electronic designs (*Id.*).  Plaintiff also alleges

7  Defendant Philippi confiscated these items in retaliation for Plaintiff complaining about NSP

8  grievance procedures (*Id.*).  Plaintiff contends Defendant Philippi's actions constitute a

9  violation of his Fourteenth Amendment due process rights (*Id.*).

10    In Count III, Plaintiff asserts a violation of his First Amendment right of access to the

11  courts (*Id.* at 11).  Plaintiff alleges that, during his time at NSP, protective segregation inmates

12  were not allowed adequate time in the law library as provided for in NSP's Institutional

13  Procedures (*Id.*).  Plaintiff alleges he was supposed to get eight (8) hours per week in the law

14  library and was lucky to get four (4) hours per week (*Id.*).  As a result of the alleged inadequate

15  law library access, Plaintiff claims he suffered an injury in not being able to recreate and file

16  one of his § 1983 actions prior to the expiration of the statute of limitations (*Id.*).  Plaintiff

17  asserts Defendant Baca was responsible for the inadequate law library access, was aware of

18  the inadequacy, and failed to promptly correct it (*Id.*).

19    Plaintiff requests relief in the form of actual damages, compensatory damages and

20  injunctive relief protecting him against future bad acts of Defendants (*Id.* at 14).

21                    **II.  STANDARD FOR SUMMARY JUDGMENT**

22    The purpose of summary judgment is to avoid unnecessary trials when there is no

23  dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

24  18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where,

25  viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

26  are no genuine issues of material fact in dispute and the moving party is entitled to judgment

27  as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

28                                             2

1    Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis

2    for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where reasonable

3    minds could differ on the material facts at issue, however, summary judgment is not

4    appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516

5    U.S. 1171 (1996).

6        The moving party bears the burden of informing the court of the basis for its motion,

7    together with evidence demonstrating the absence of any genuine issue of material fact.

8    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

9    the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

10   but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty*

11   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an

12   inadmissible form, only evidence which might be admissible at trial may be considered by a

13   trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v.*

14   *Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

15       In evaluating the appropriateness of summary judgment, three steps are necessary:

16   (1) determining whether a fact is material; (2) determining whether there is a genuine issue

17   for the trier of fact, as determined by the documents submitted to the court; and (3)

18   considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477

19   U.S. at 248.  As to materiality, only disputes over facts that might affect the outcome of the

20   suit under the governing law will properly preclude the entry of summary judgment; factual

21   disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a

22   complete failure of proof concerning an essential element of the nonmoving party's case, all

23   other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

24   of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,

25   but an integral part of the federal rules as a whole. *Id.*

26   ///

27   ///

28
                                        3

1

**III.  DISCUSSION**

2      Defendants request summary judgment on both of Plaintiff's remaining claims (Doc.

3   #23).  With regards to the seizure of Plaintiff's personal property, Defendants first assert the

4   seizure does not represent a First Amendment violation and deference should be granted to

5   them because the property seized represented a threat to institutional safety and security (*Id.*

6   at 6-9).  Next, Defendants assert Plaintiff's Fourteenth Amendment rights were not violated

7   because he had no right to be in possession of the property seized because it was contraband

8   (*Id.* at 11-12).  Finally, Defendants assert they are entitled to qualified immunity with respect

9   to said seizure (*Id.* at 12).  With regard to the alleged inadequate law library access, Defendants

10  assert the facts do not support Plaintiff's allegations as he was able to work on other legal

11  issues and Plaintiff has not shown the access he was given was unreasonable (*Id.* at 13-14).

12      Plaintiff argues the items seized were not a threat to institutional safety and security

13  and Defendants' response was exaggerated (Doc. #25 at 5).  Plaintiff further argues

14  Defendants are not entitled to qualified immunity with regards to the seizure because

15  Defendant Baca was aware of NSP's mailroom procedures, which are the same procedures

16  used at ESP, and those items were received at ESP through authorized procedures (*Id.* at 12).

17  Plaintiff contends Defendant Baca knew Plaintiff held a "responsible and security sensitive

18  job" at SDCC and was a teacher's aide at LCC where he taught inmates "the kinds of things

19  that Defendants claim to be a security risk"; thus, Plaintiff insinuates that Defendant Baca

20  knew he was not a security risk and, therefore, his seized items did not pose a security risk

21  (*Id.*).  Finally, Plaintiff argues the law library access for protective segregation inmates was

22  so limited that his access was "de facto unreasonable." (*Id.* at 13).

23      Defendants respond that Plaintiff failed to produce any evidence to support his claims

24  (Doc. #28 at 2).  Defendants reiterate that the court should grant them deference in their

25  decision to seize Plaintiff's personal property because it posed a potential safety and security

26  risk (*Id.* at 3-6).  Defendants also respond that they are entitled to qualified immunity,

27  Plaintiff's due process claim fails because he was afforded an adequate post-deprivation

28

4

1    remedy, and Plaintiff cannot show he suffered an actual injury as a result of the allegedly

2    inadequate law library access (Doc. #28 at 7-9).

3         The first inquiry must be whether there was, in fact, a violation of Plaintiff's

4    constitutional rights.  This issue is dispositive of Plaintiff's claims and if this question is

5    answered negatively, the court must grant summary judgment on the merits without the need

6    to consider Defendants' remaining arguments.  Accordingly, the court will address this issue

7    first.

8    **A.    FIRST AMENDMENT**

9         "[A] prison inmate retains those First Amendment rights that are not inconsistent with

10   his status as a prisoner or with the legitimate penological objectives of the corrections system."

11   *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  A regulation that impinges on First Amendment

12   rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*,

13   482 U.S. 78,89 (1987).  In determining whether the regulation at issue is reasonably related

14   to a legitimate penological interest, the Supreme Court directs the court to consider the

15   following four factors: (1) whether there is a valid, rational connection between the regulation

16   and the interest used to justify the regulation; (2) whether prisoners retain alternative means

17   of exercising the right at issue; (3) the impact the requested accommodation will have on

18   inmates, prison staff, and prison resources generally; and (4) whether the prisoner has

19   identified easy alternatives to the regulations which could be implemented at a minimal cost

20   to legitimate penological interests. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *see also*

21   *Turner*, 482 U.S. at 89-91.  The first of these factors is the most important. *See Morrison v.*

22   *Hall*, 261 F.3d 896, 901 (9th Cir. 2001).

23        Legitimate penological interests include "the preservation of internal order and

24   discipline, the maintenance of institutional security against escape or unauthorized entry, and

25   the rehabilitation of prisoners." *Procunier v. Martinez*, 416 U.S. 396 (1974) (footnote

26   omitted), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

27   ///

28                                              5

### 1.    Free Speech (Count II)

Plaintiff claims Defendants violated his First Amendment right to free speech when they seized "maps of some type of structer (sic)", a years worth of Home Power magazines, a Maytag catalog, and a "9"x12" envelope" containing Plaintiff's own electronic designs (Doc. #7 at 10).  Plaintiff points to no regulation at issue that violates his First Amendment right to free speech.  Instead, Plaintiff appears to assert Defendants violated his right to free speech because they seized property related to his own designs of a small cabin in the wilderness and two (2) storage devices capable of storing messages, and Plaintiff contends his ideas and designs are protected by the First Amendment (Doc. #25 at 7-8).  Defendants assert they seized Plaintiff's property under Administrative Regulation 711 because said property constituted contraband (Doc. #23 at 11).

AR 711 defines contraband as follows:

> Any item or article not authorized by Department regulations, or in excess of the maximum quantity permitted, or which is received or obtained from an unauthorized source, is contraband. Any item or article of property that poses a serious threat to the security of the institution and ordinarily [is] never approved for possession or admission into the institution, and any item or article which may be, or has been authorized for possession at one time, but now is prohibited for possession due to heath, fire or safety concerns.  Any authorized property that has been altered.

While a prisoner's right to receive publications from outside the prison should be analyzed in light of the *Turner* factors, *Morrison v. Hall*, 261 F.3d 896, 901-901 (9th Cir. 2001), as previously stated, Plaintiff does not allege Defendants seized his publications or his other personal items under any regulation as an outright prohibition of said items.  And Plaintiff does not allege AR 711 violates the First Amendment.  Thus, the *Turner* factors are not in dispute and presumably AR 711, on its face, satisfies the *Turner* test.  Plaintiff does, however, essentially argue that, although AR 711 is facially valid, Defendants' application of AR 711 as applied to him was unconstitutional.  Accordingly, the court must determine whether the regulation was unconstitutional as applied to Plaintiff by examining "whether applying the regulation to that speech … was rationally related to the legitimate penological

6

1   interest asserted by the prison." *Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002); *see also*

2   *Shaw*, 532 U.S. at 232.  In other words, as explained by other district courts in this Circuit,

3   "[i]n the posture of a motion for summary judgment, the question is whether a jury could

4   reasonably conclude that prison officials acted unreasonably in applying the [NDOC] policy

5   to the Plaintiff's [exercise of free speech] in light of the asserted penological interests." *Miller*

6   *v. Conway*, ---- F. Supp. 2d ----, 2007 WL 2782246, 5 (D. Idaho 2007) (official citation not

7   available) (quoting *Clark v. Mason*, ---- F. Supp. 2d ----, 2007 WL 2417154, at 2 (D. Wash.

8   2007) (official citation not available)).

9          Under these facts, Defendants' application of AR 711 to Plaintiff's magazines and

10  designs was rationally related to the legitimate penological interest of institutional safety and

11  security. Defendants assert Plaintiff's seized items evidenced a possible intent to escape (Doc.

12  #23 at 7).  The evidence shows Plaintiff believes he will die in prison unless he prevails on one

13  of his lawsuits (Doc. #23, Exh. B, p. 16).  Although Plaintiff states he does not have a life

14  sentence without the possibility of parole, Plaintiff has nevertheless given up on going before

15  the parole board and has no intention of going the next time (*Id.* at 17).  Plaintiff asserts he

16  was designing a small cabin in the woods, which included a generator shed, power shed and

17  pump house and its own solar and wind systems, "[a]ssuming [he] get[s] out of here, which

18  means prevailing on a couple of lawsuits pretty quickly ..." (*Id.* at 7, Exh. B, p. 16).  Plaintiff

19  apparently ordered magazines in order to look for appliances for his cabin in the woods (*Id.*).

20         Standing alone, an inmate who believes he will die in prison spending his time

21  designing an elaborate remote cabin in the woods may not necessarily imply a possible escape

22  attempt, as he may use such designs as a way to pass the time.  However, the record also

23  indicates Plaintiff is a self-proclaimed expert in electronics and was also designing "do

24  nothing" boxes with blinking lights that could be programmed to blink out messages in morse

25  code that he could send to people outside the institution (Doc. #23 at 8, Doc. #25 at 8-9).

26  Plaintiff asserts these "do nothing" boxes pose no danger to institutional safety and security

27  because they could only send short messages to loved ones and could be easily checked by

28                                                    7

1   prison staff before being sent out of the institution.  However, the fact remains that Plaintiff

2   is the electronics expert, not Defendants, and Plaintiff could conceivably send a box to a loved

3   one or someone else containing more than just a short message and that message, possibly

4   containing plans for an escape attempt, could go undetected by Defendants and NDOC staff

5   who are not electronics experts (Doc. #25 at 9).  Accordingly, under these facts, even viewing

6   the facts and the evidence in the light most favorable to Plaintiff, the court cannot say a jury

7   could reasonably conclude that prison officials acted unreasonably in determining Plaintiff's

8   seized property posed a risk to institutional safety and security.

9          Despite prior approval at ESP for the same property, officials at NSP, in their discretion,

10  reasonably believed the property at issue concerning a remote cabin in the woods and

11  electronic devices that store messages in code used to send messages to people outside the

12  institution may be property used by Plaintiff, an electronics expert, in a possible escape

13  attempt.  As provided in AR 711, any item or article which may be, or has been authorized for

14  possession at one time, but now is prohibited for possession due to safety concerns is

15  contraband.  Thus, although Plaintiff's items may have been authorized at ESP, Defendants

16  at NSP provided a "reasonable relation" between the seizure of said property and the

17  legitimate penological interest of preventing a possible escape attempt and preventing

18  unauthorized messages from being sent to individuals outside the prison.

19         By challenging Defendants' decision finding Plaintiff's property constituted contraband,

20  Plaintiff requests the court substitute its own judgment and overrule a discretionary function

21  of the prison.  This is not the function of the court. *Witherow v. Crawford*, 468 F. Supp. 2d

22  1253, 1269 (D. Nev. 2006) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433

23  U.S. 119, 128 (1977)).  Furthermore, as the United States Supreme Court observed, albeit in

24  the Fourth Amendment context, "[p]rison officials must be free to seize from cells any articles

25  which, in their view, disserve legitimate institutional interests." *Hudson v. Palmer*, 468 U.S.

26  517, 528, n.8 (1994).

27

28                                                    8

1   For the foregoing reasons, under these facts, Defendants have shown a legitimate

2   penological interest in seizing Plaintiff's property and summary judgment on Plaintiff's First

3   Amendment free speech claim should be **GRANTED**.

4   **2.   Retaliation (Count II)**

5   As previously stated, inmates retain their First Amendment rights, even within the

6   expected conditions of confinement. *Hines v. Gomez,* 108 F.3d 265, 270 (9th Cir. 1997).  It

7   is well established that when prison officials retaliate against inmates for exercise of the

8   inmate's First Amendment rights, such as filing a grievance against a prison guard, the inmate

9   has a claim cognizable under § 1983. *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994),

10  *see also Rhodes,* 408 F.3d 559, 567 (9th Cir. 2005)*(*accepting this proposition and citing

11  decisions of other circuits that accord).

12  In order to prove a claim of First Amendment retaliation, an inmate plaintiff must (1)

13  assert "that a state actor took some adverse action against an inmate (2) because of (3) that

14  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

15  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

16  goal." *Rhodes,* 408 F.3d at 567-68.   In pursuing a claim of retaliation, "[t]he plaintiff bears

17  the burden of pleading and proving the absence of legitimate correctional goals for the conduct

18  of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)**.**

19  Plaintiff complains Defendant Philippi seized his property in retaliation for Plaintiff

20  complaining about NSP grievance procedures (Doc. #7 at 10).  However, as discussed in detail

21  *supra*, Defendant Philippi had legitimate correctional goals of institutional safety and security

22  in seizing Plaintiff's property; thus, Plaintiff has failed to meet his burden of proving the

23  absence of legitimate correctional goals for Defendant Philippi's conduct.   Accordingly,

24  summary judgment on Plaintiff's First Amendment retaliation claim should also be

25  **GRANTED**.

26  ///

27  ///

28  9

1

### 3.     Denial of Access to the Courts (Count III)

2      Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S.

3   343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bradley v. Hall*, 64 F.3d 1276,

4   1279 (9th Cir. 1995).   This right "requires prison authorities to assist inmates in the

5   preparation and filing of meaningful legal papers by providing prisoners with adequate law

6   libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

7   This right "guarantees no particular methodology but rather the conferral of a capability-the

8   capability of bringing contemplated challenges to sentences or conditions of confinement

9   before the courts." *Lewis*, 518 U.S. at 356.  The touchstone is the capability of challenging

10   convictions or conditions of confinement, rather than the capability of turning pages in a law

11   library. *Lewis*, 518 U.S. at 357.

12      The constitution does not guarantee unlimited access to a law library. *Lindquist v.

13   Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985).  Prisons must only provide

14   access to a library that meets minimum constitutional standards. *Sands v. Lewis*, 886 F.2d

15   1166, 1169 (9th Cir.1989). Prison officials may regulate law library access, taking into account

16   the security risk posed by individual prisoners. *Toussaint v. McCarthy*, 801 F.2d 1080,

17   1109-1110 (9th Cir. 1986), *cert. denied* , 481 U.S. 1069 (1987). Prison officials may also

18   regulate the time, manner, and place in which library facilities are used. *Lindquist*, 776 F.2d

19   at 858.  The fact that an inmate must wait for a turn to use the library does not necessarily

20   mean that he has been denied meaningful access to the courts. *Id.*

21      A prisoner contending that his right of access to the courts was violated because
       of inadequate access to a law library must establish two things: First, he must
22      show that the access was so limited as to be unreasonable.  Second, he must
       show that the inadequate access caused him actual injury, i.e., show a "specific
23      instance in which [he] was actually denied access to the courts."

24   *Vandelft v. Moses*, 31 F.3d 794, 797 (9th Cir. 1994) (internal citations omitted).  However,

25   it is the State's burden to provide meaningful access and to demonstrate that its chosen

26   method is adequate. *Storseth v. Spellman*, 654 F.2d 1349, 1352 (9th Cir. 1981).

27

28                                         10

1    Here, Plaintiff alleges Defendants violated his right of access to the courts by not

2    providing him with the required eight (8) hours per week of law library access time (Doc. #7

3    at 11). Plaintiff further alleges he was lucky to get four (4) hours per week and frequently got

4    "less or none at all." (*Id*.). Plaintiff notes he had no access when Mondays were holidays

5    because his library access day was Monday (*Id*.). Plaintiff asserts that as a result of the

6    inadequate law library access, he was unable to recreate another § 1983 action, that was

7    purportedly damaged, prior to the statute of limitations (*Id*.). Thus, Plaintiff's claimed injury

8    is the inability to file a § 1983 action prior to the expiration of the statute of limitations.

9    Defendants assert Plaintiff's law library access was not so limited as to be unreasonable,

10   which is evidenced by his ability to complete other higher priority legal work (Doc. #23 at 14-

11   15). Defendants contend Plaintiff was allowed law library access on Monday mornings and

12   afternoons and Plaintiff was given the option of checking out up to five (5) books for a period

13   of three (3) days (*Id*. at 14). Defendants also contend Plaintiff had the option of copying any

14   loose-leaf or paperback books at his expense (*Id*.). Finally, Defendants assert Plaintiff cannot

15   show he suffered any actual injury associated with inadequate law library access (*Id*. at 16).

16   Plaintiff argues that a review of Count I, which was previously dismissed, reveals that

17   he required a great deal of time in the law library and, because the protective custody inmates

18   did not have desks, tables or shelves in their housing units, Plaintiff had to use his time in the

19   law library for both research and writing (Doc. #25 at 13). Plaintiff further argues, for a period

20   of time, the law library was closed when the only staff member was seriously ill and, when it

21   was opened, Plaintiff was consistently escorted to the law library late and from the law library

22   early (*Id*.). Plaintiff alleges the inadequate access to the law library is the reason Plaintiff had

23   to prioritize his legal work and determine what to save and what to sacrifice (*Id*.). In short,

24   Plaintiff alleges he was denied 80-100 hours of scheduled law library access time, which not

25   only caused him to sacrifice another § 1983 action, but is the reason Count I in this suit was

26   not properly pled and ultimately dismissed (*Id*. at 3). Plaintiff asserts the fact that he was able

27   to work on other higher priority legal work does not demonstrate he had reasonable access

28                                                11

1   to the law library and complete records of Plaintiff's actual time in the law library disappeared

2   from his possession indicating they were seized by NDOC staff (*Id.* at 3).

3       The crux of Plaintiff's argument is not that he had inadequate law library access to

4   complete any of his legal work; instead, it's that he had inadequate access to complete the

5   amount of legal work he wanted to complete including another § 1983 action and, therefore,

6   he was forced to prioritize his legal work when he should not have had to do so (Doc. #25 at

7   14).   The record indicates Plaintiff had access to the law library on Monday mornings and

8   afternoons, other than the occasional holiday that fell on a Monday (Doc. #23 at 14).  Plaintiff

9   has not provided specific facts indicating how many days the law library was closed due to a

10   staff member's illness, when the alleged closure took place, or how many Mondays said closure

11   affected Plaintiff's access to the law library (*Id.* at 13).  Plaintiff also has not provided specific

12   facts regarding how late he arrived or how early he left the law library on his scheduled days

13   (*Id.*).   The record does indicate on the other hand  that, although Plaintiff does not recall

14   having the ability to check out books, he was permitted to check out up to five (5) books at

15   a time and to keep those books in his cell for a period of three (3) days. *See* Institutional

16   Procedure 7.12.  The record also indicates Plaintiff was able to complete several other legal

17   actions which Plaintiff deemed higher priority than the purported § 1983 action he claims he

18   was forced to sacrifice, including a writ of habeas corpus and two (2) additional civil lawsuits

19   (*Id.* at 15).  The law library access was apparently sufficient for Plaintiff to file these three (3)

20   separate actions within the required deadlines.

21       Under these facts, although Plaintiff claims an injury, Plaintiff has failed to show his

22   law library access was so limited as to be unreasonable.  As previously stated, the touchstone

23   of a prisoner's right of access to the court's and access to a law library is the capability of

24   bringing contemplated challenges to sentences or conditions of confinement.   Based on the

25   law library access Plaintiff was afforded, he was capable of challenging three (3) other

26   sentences and/or conditions of confinement.  Plaintiff essentially requests an optimal level

27   of access to the law library so that he could have challenged an additional condition of

28                                          12

1  confinement. The Ninth Circuit's decisions "have reflected [the] belief that the Constitution

2  requires that certain minimum standards be met; it does not require the maximum or even

3  the optimal level of access." *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (citing

4  *Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989)). Here, Defendants have met their burden

5  of demonstrating the chosen method of access to the law library was meaningful and adequate.

6  The evidence shows Plaintiff was provided at least access that meets minimum constitutional

7  standards. Accordingly, summary judgment on Plaintiff's First Amendment denial of access

8  to the court's claim should be **GRANTED**.

9  **B.  FOURTEENTH AMENDMENT – Due Process (Count II)**

10  The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply

11  only when a constitutionally-protected liberty or property interest is at stake. *See Ingraham*

12  *v. Wright*, 430 U.S. 651, 672 (1977); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972);

13  *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995); *Schroder v. McDonald*, 55 F.3d

14  454, 462 (9th Cir. 1995). To have a property interest at stake, a person must have more than

15  an abstract need or desire for it; a person must, instead, have a legitimate claim of entitlement

16  to it. *Roth*, 408 U.S. at 577.

17  Plaintiff contends, when an inmate's property is seized, the courts require Defendants

18  give the inmate "notice and the reason(s) for the seizure and the opportunity to contest the

19  seizure." (Doc. #25 at 11). However, as previously discussed, Plaintiff has failed to establish

20  a recognized property interest in the items seized where said items may be classified as

21  contraband by prison officials. An inmate does not have a property interest in possessing

22  contraband. *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006); *Lyon v. Farrier*, 730

23  F.2d 525, 527 (8th Cir. 1984).

24  Under AR 711, any item or article which may be, or has been authorized for possession

25  at one time, but now is prohibited for possession due to safety concerns is contraband.

26  Defendants seized Plaintiff's property due to safety concerns. Thus, because Plaintiff has no

27  property interest in possessing said property, he is not entitled to procedural due process when

28

13

1   these materials are removed from his possession. *Steffey*, 461 F.3d at 1221.  Notice and a

2   reason for the seizure are procedural protections and Defendants' failure to follow these

3   procedural protections does not translate into a due process violation. *Bostic v. Carlson*, 884

4   F.2d 1267, 1270 (9th Cir. 1989).  Accordingly, summary judgment on Plaintiff's Fourteenth

5   Amendment Due Process claim should be **GRANTED**.

6          As previously discussed, because the record shows there was, in fact, no violation of

7   Plaintiff's constitutional rights, the court should grant summary judgment on the merits and

8   need not consider Defendants' remaining arguments.

9                              **RECOMMENDATION**

10         **IT IS THEREFORE RECOMMENDED** that the District Judge enter an order

11  **GRANTING** Defendants' Motion for Summary Judgment (Doc. #23).

12         The parties should be aware of the following:

13         1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

14  Local Rules of Practice, specific written objections to this Report and Recommendation within

15  ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's

16  Report and Recommendation" and should be accompanied by points and authorities for

17  consideration by the District Court.

18         2.      That this Report and Recommendation is not an appealable order and that any

19  notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the

20  District Court's judgment.

21         DATED:   July 2, 2008.

22

23  _____

24                              UNITED STATES MAGISTRATE JUDGE

25

26

27

28                                      14